# EXHIBIT 25

**From:** stephen blumenthal stephen3d@mac.com 
**Subject:** FW: Rembrandt 3D IP Rights
**Date:** February 2, 2023 at 12:08 PM
**To:** Neil Wallace ntwallace@aol.com, ademarco@devlinlawfirm.com, Stephen Blumenthal stephen3d@mac.com

**Christopher A. Michaels**
*Registered Patent Attorney*
*Chief Executive Officer*



118 N. Tioga Street, Suite 400, Ithaca, New York 14850
Main: 607-256-2000  Fax: 607-256-3628
www.brownandmichaels.com

Email: michaels@bpmlegal.com
Direct Dial:  607-203-9470

Confidentiality Note: This email may contain confidential information that is subject to attorney-client privilege. If you received this email in error, please delete all message content from your system and notify sender.

**From:** Christopher Michaels
**Sent:** Tuesday, April 20, 2021 3:24 PM
**To:** eben.colby@skadden.com; marley.brumme@skadden.com; joseph.larkin@skadden.com; jenness.parker@skadden.com; jason.liberi@skadden.com; jlathrop@rc.com; dwright@rc.com; Alissa.Castaneda@quarles.com; Brandon.Krajewski@quarles.com; Brittany.Ogden@quarles.com
**Cc:** stephen3d@mac.com; ntwallace@aol.com; 'Chi Eng' <chi@englawfirm.com>
**Subject:** Rembrandt 3D IP Rights

Dear counsel for SLS Holdings VI, LLC and SeeCubic, Inc.:

We understand that there is a hearing on April 26, 2021 in the Stream TV bankruptcy chapter 11 filing and that you have filed for a motion to dismiss the Stream TV bankruptcy.

We assume that you are aware of our pending litigation against Stream TV, but I have attached copies of our First Amended Complaint filed against Stream TV (additional exhibits sent by separate email). Regardless of the outcome of the pending motions in the bankruptcy, we feel a negotiated settlement is in the best interest for all parties.

Stephen Blumenthal is the key originator of the intellectual property advancements, which resulted in the developments currently included in the on-screen display of the Stream Networks TVs that we have evaluated. Steve's company, Rembrandt3D Holdings, owns all of the rights to the 3D without glasses technology that were developed by Steve by late 2009 and included in a patent application filed in December of 2009.

In January 2010, Steve started working with the Eindhoven based team, transferring all of his advancements, trade secrets and the know-how he had discovered from over two years, and 1,000's of hours of rendering with the 3DSolutions licensed tools.  The-14-months spent working with his Dutch team included thousands of e-mails, hundreds of Skype calls, 43 3DFusion video projects, and 70 pages of detailed weekly meetings minutes with the same 12 Dutch team members that are now the SeeCubic engineering team.  The technology Stream purports to own was based on the technology

SeeCubic engineering team." The technology Stream purports to own was based on the technology disclosed by Steve and 3DFusion to the Rajans and Steve's former Philip's 3DSolution's team, during the time when the "team" was working for the 3DFusion wholly own Dutch Corporate subsidiary, 3DFusionEU.BV.

The lawsuit that we filed against Stream TV and the Rajan's as individuals originally included a patent infringement complaint, which has been separated out by Judge Abrams. While the Supreme Court's decision in TC Heartland provides that we need to bring the patent infringement case in Philadelphia or Delaware, nothing about the substance of the patent infringement claim has changed. Rembrandt's First Amended Complaint has provided a detailed claim chart showing how every TV sold by Stream TV includes every element of the patent claims. After years of being on notice of infringement of the Rembrandt patents, Stream TV has not identified a single element of a single claim of Rembrandt's patents that is missing from the Stream TV. Nothing about the Delaware action or the bankruptcy provides anyone a license to Rembrandt's patents. Neither Stream TV, SeeCubic, or their licenses and customers are going to be able to sell a TV without infringing the Rembrandt's patents.

We thought we had reached a resolution with Stream TV that would have granted Stream TV a license to Rembrandt's technology rights and are seeking to enforce that resolution in the Southern District of New York. We reached this agreement with Stream TV when Shad Statsney was the CFO.

Rembrandt's legal team is obviously working on contingency, while the costs of defending such a case will run into the 10-million-dollar range and be a detriment for any fund raising. At the end of the day, Rembrandt still wants to see a 3D TV on the market rather than litigate. Consequently, we still think there is a logical basis to seek a settlement now with a guaranteed outcome, rather than fight over IP rights with either Stream TV or SeeCubic.

Regardless of the outcome of SeeCubic's Delaware litigation or the motion to dismiss in the bankruptcy court, the Rembrandt technology rights are not transferring to SeeCubic. Stream TV can not transfer rights it does not own and Rembrandt's IP is interwoven into all of the technology Stream TV uses in its 3D displays. Assuming the physical assets and stock in the subsidiary companies are transferred to SeeCubic, that just means that SeeCubic is trying to raise funding after being put on notice of a patent infringement, contract, and trade secret misappropriation claim. I have worked with clients trying to raise money in such a posture and advised private equity companies considering investing in firms with pending IP claims. While it is possible to raise funds under such a cloud, the investors pay pennies on the dollar for what would be a normal valuation.

I note from SeeCubic's filings that some of the common equity holders were included in SeeCubic in preference to any payments to the unsecured creditors. I would expect that the unsecured creditors will be unified in opposing the transfer of assets from Stream TV to SeeCubic or argue that any rights in SeeCubic that went to equity holders should be paid to the unsecured creditors instead.

Your motion to dismiss is compelling except for its failure to mention the dispute regarding the ownership of the IP and licenses from Rembrandt. Even if the Delaware court's decision is upheld, I don't see anything in it that would transfer the license that Rembrandt is seeking to enforce against Stream TV. Assuming the bankruptcy proceeds, without the Rembrandt Licensing rights to the technology, it will not matter whose reorganization plan is approved. Rembrandt has the wherewithal to block any transfer of IP assets to either party, precluding any investor based business.

Ironically, if Stream TV performs its agreement with Rembrandt, they would have a license and be in a position to claim that Rembrandt license is worth hundreds of millions of dollars such that Stream TV should be allowed to file a reorganization plan to allow it to proceed under license from Rembrandt to pay off the creditors.

We certainly contend that our IP rights are worth far more than Stream TV's liabilities and were clearly not transferred to SeeCubic in the Delaware action, so it seems that about the only asset Stream TV would have to oppose SeeCubic's motion to dismiss is to argue that it has a license from Rembrandt that dominates the assets that would be transferred to SeeCubic and that Stream TV has a going concern value based on the value of the licensing rights purchased from Rembrandt. In addition, the

concern value based on the value of the licensing rights purchased from Rembrandt. In addition, the unsecured creditors could use it as a way to oppose the motion to dismiss and to push for the unsecured creditors to get a better outcome.

I propose that we set up a time to discuss in the near future, preferably in advance of the April 26 hearing.

Chris
IP Counsel for Rembrandt 3D


**Christopher A. Michaels**
*Registered Patent Attorney*
*Chief Executive Officer*


*Email:* *michaels@bpmlegal.com*
*Direct Dial:  607-203-9470*

Confidentiality Note: This email may contain confidential information that is subject to attorney-client privilege. If you received this email in error, please delete all message content from your system and notify sender.

    

26-First Amend...int.pdf    US8558830.pdf    US9521390.pdf    US9681114.pdf    assignment-pat-42...50.pdf