# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REMBRANDT 3D HOLDING LTD., | ) |
| | ) C.A. No. 23-193-JLH |
| Plaintiff, | ) |
| | ) **JURY TRIAL DEMANDED** |
| v. | ) |
| | ) |
| TECHNOVATIVE MEDIA, INC. HAWK | ) |
| INVESTMENT HOLDINGS LTD., AND | ) |
| SEECUBIC, INC., | ) |
| | ) **PUBLIC VERSION** |
| Defendants. | ) |

**LETTER TO THE HONORABLE SHERRY R. FALLON REGARDING DEFENDANT SEECUBIC, INC.'S REQUEST TO PERMIT SEECUBIC'S CHIEF EXECUTIVE OFFICER ACCESS TO PLAINTIFF'S DISCLOSURE OF TRADE SECRETS**

Benjamin J. Schladweiler (#4601)
Lisa M. Zwally (#4328)
Renée Mosley Delcollo (#6442)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
(302) 661-7000
schladweilerb@gtlaw.com
lisa.zwally@gtlaw.com
renee.delcollo@gtlaw.com

*Attorneys for Defendant SeeCubic, Inc.*

Dated:  November 6, 2024

**GT GreenbergTraurig**

Dear Judge Fallon:

Pursuant to the Court's Oral Order (D.I. 70), Defendant SeeCubic, Inc. ("SeeCubic") respectfully requests that the Court issue the order attached hereto permitting SeeCubic's Chief Executive Officer ("CEO"), Mr. Shadron Stastney, access to Plaintiff Rembrandt 3D Holding Ltd.'s ("Rembrandt" or "R3D") Disclosure of Trade Secrets served on October 11, 2024.

I.  **BACKGROUND**

   A. **Rembrandt's Complaint**

Rembrandt filed this action on February 21, 2023, asserting that SeeCubic misappropriated its trade secrets. More specifically, Rembrandt's Complaint alleged that SeeCubic's CEO, Mr. Stastney, learned of Rembrandt's purported trade secrets while participating in a mediation as then-Chief Financial Officer of third-party Stream TV Networks, Inc. ("Stream"). (D.I. 1, ¶75-88). That mediation was to resolve a breach of contract action pending in the Southern District of New York that Rembrandt brought against Stream. (*Id.*). According to the Complaint, "a list of [Rembrandt's] Trade Secrets was developed" at that mediation and the list was "included as an exhibit to the drafts of settlement term sheets." (*Id.*, ¶80). Rembrandt attached this "list" of purported trade secrets to its Complaint. The list identifies *three* trade secrets, and is reproduced below:

**SCHEDULE A**

1. Knowhow and trade secrets related to methodology for:
   a. efficiently converting, correcting and optimizing a 2D+Depth video for playback on a 3D autostereoscopic associated with the Philips technology
   b. utilizing the Philips 2d Switchable Lens technology for refractive and defractive lens switching for the creation of the 'lightfield' and 3d content artefact correction.
   c. utilizing the On Screen Display functions of Borders and "Liveliness."
2. Trademarks
3. the patents asserted in Rembrandt's First Amended Complaint, and dismissed by the Court on March 28, 2018 (ECF No. 47)

(D.I. 1, Exhibit 5).[1]

Rembrandt alleges throughout its Complaint that SeeCubic knew about its purported trade secrets through Mr. Stastney's participation in that mediation, as shown by the excerpts below (D.I. 1 (emphasis added)):

- "***SeeCubic . . . had prior knowledge of the trade secret*** being misappropriated." (¶19).
- "***Mr. Stastney was fully aware*** of R3D's ownership of the trade secrets." (¶20).
- "During [the mediation], ***Mr. Stastney had personal knowledge*** and played a key role in the negotiations and executed the Rembrandt 3D Settlement Term Sheet, during the

---

[1] Rembrandt's allegation that this term sheet evidences SeeCubic's acquiescence to the validity of Rembrandt's purported trade secrets is demonstrably not true. SeeCubic was not a party to that term sheet. Moreover, the provisions therein show that Rembrandt agreed to release all claims it had against Stream, making the identification of alleged trade secrets irrelevant to resolution of the breach of contract dispute between Stream and Rembrandt. (D.I. 1, Ex. 5, ¶5).

- mediation. This document was signed by all parties including Magistrate Parker on April 12, 2019, and is unequivocal proof of **Stastney's comprehensive knowledge of the R3D ownership rights**, which he was obligated to disclose to his investors, customers and the courts. These documents support Plaintiff's allegation that **Stastney knew about R3D ownership rights** while authorizing SeeCubic's development and commercial markets expansion. (¶26).
- "**Stastney knew** that he was trampling on R3D's ownership rights" (¶29).
- "Despite **having knowledge of R3D's intellectual property rights and the trade secret claims**, neither Shadron Stastney nor SeeCubic ever provided R3D with notice of the Omnibus Agreement or SeeCubic's attempts to transfer R3D's technology to its control." (¶88).
- "**Mr. Stastney had actual knowledge of the misappropriation** because he knew that Plaintiff owned the technology and that Stream needed a license to possess and utilize it." (¶121).

Rembrandt also alleges that "engineers" that "used to work with" SeeCubic knew about the purported trade secrets, although the "engineers" identified in the Complaint were never actually employed by SeeCubic, Inc. (D.I. 1, ¶4 ("The *trade secrets* licensed by R3D to Stream are embedded in the technology Stream included in its products and *are known* to the engineers that used to work with 3DFusion, then Stream, and now *SeeCubic*.").

### B. The Protective Order

On September 6, 2024, this Court entered the Stipulated Protective Order (D.I. 56). Paragraph 6.2 of the Protective Order provides that an individual may have access to information designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY if they are the "author or recipient of a document containing the information or . . . *otherwise possessed or knew the information*." (*Id.*, ¶ 6.2(g) (emphasis added)).

### C. Rembrandt Improperly Designates Its Trade Secret Disclosure as "Attorneys' Eyes Only"

On October 11, 2024, Rembrandt served its Disclosure of Trade Secrets (**Ex. A**) pursuant to Paragraph 3 of the Scheduling Order. These disclosures ballooned Rembrandt's asserted trade secrets from the *three* listed in its Complaint to a staggering *175*. This Trade Secret Disclosure was not marked as confidential pursuant to the Protective Order when it was served, however, later that day, Rembrandt's counsel claimed that the disclosures should be treated as "attorney's eyes only" until it could "parse" through the designations "in the next few days." (**Ex. B**, at pg. 7). Rembrandt's counsel finally responded on October 16, admitting that it improperly designated certain publicly-disclosed "trade secrets" as attorneys' eyes only ("AEO") material, claiming it would work with its client to identify the scope of that improper designation, but nevertheless refusing to allow SeeCubic's CEO, Mr. Stastney, access to the list of trade secrets SeeCubic is alleged to have misappropriated. (*Id.* at p. 3-5).

On October 23, Rembrandt de-designated only *three* of its *175* purported trade secrets as "Non-AEO." (**Ex. C**)[2] In doing so, Rembrandt acknowledged that its Trade Secret Disclosures

---

[2] Although this disclosure purports to list four "trade secrets," two of those (trade secrets #3 and #4) are word-for-word duplicates. (*See* **Ex. C**).

The Honorable Sherry R. Fallon
November 6, 2024

included information that was publicly disclosed in the term sheet attached to Rembrandt's complaint (D.I. 1, Ex. 5) and in a 2015 patent application (D.I. 1, Ex. 1, ¶114; Ex. 22, ¶33). Nonetheless, Rembrandt refused to de-designate any of the other "trade secrets" listed in its Trade Secret Disclosure and took the position that **no one** from SeeCubic could see the other **171** purported trade secrets SeeCubic is accused of misappropriating.[3]

## II.   ARGUMENT

Rembrandt's position that no employee or executive of SeeCubic, Inc. is allowed to know the 171 trade secrets they are alleged to have misappropriated fails on two crucial grounds. <u>First</u>, Rembrandt's attempt to shield its allegations from SeeCubic, Inc. violates SeeCubic's due process rights. As multiple courts have acknowledged in similar situations, SeeCubic has the constitutional right to know what it is accused of so that it can properly defend itself. *See, e.g., I-Mab Biopharma v. Inhibrix, Inc.*, C.A. 22-276-CJB, D.I. 451 (D. Del. Oct. 14, 2024) ("defendants who are alleged to have engaged in trade secret misappropriation should be permitted to review the core trade secret material they purportedly accessed/misused, at some point prior to trial, so that they are given a fair opportunity to prepare a defense for trial and intelligently respond to the evidence against them") (**Ex. D**); *Martinez v. City of Ogden*, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) ("Defendants' request to keep information from Plaintiff implicates Plaintiff's due process rights to have a full and fair opportunity to litigate."); *HID Global Corporation v. Vector Flow, Inc.*, C.A. No. 21-1769-GBW, D.I. 249 at 4 (D. Del. May 13, 2023) (K. Keller, Special Master) ("A defendant cannot formulate an effective defense to a trade secret misappropriation claim unless it is provided with 'clear detail of what plaintiff claims is its trade secret.'") (**Ex. E**); *DIRTT Env't Sols., Inc. v. Henderson*, 2020 WL 6263039, at *4 (D. Utah Oct. 23, 2020) (denying AEO designation to disclosure of trade secrets because "[i]t would be inherently unfair to allow Plaintiff to assert" trade secret misappropriation "without allowing Defendant to test this assertion"); *Wisk Aero LLC v. Archer Aviation Inc.*, 2022 WL 3754521, at *4 (N.D. Cal. Aug. 30, 2022) ("[Plaintiff's] position does not adequately account for [Defendant's] need to discover information from witnesses that [Plaintiff] itself has identified as having percipient knowledge about the trade secrets at issue"); *Jane Street Group LLC v. Millenium Mgmt. LLC*, C.A. 24-2783-PAE, Dkt. 111 (S.D.N.Y. June 12, 2024) ("It would be unreasonable for [Plaintiff] to allege that the individual defendants 'misappropriated information, then deny [them] access to the information allegedly misappropriated.'") (**Ex. F**). As these courts recognized, a plaintiff claiming trade secret misappropriation "cannot use a CONFIDENTIAL-ATTORNEY EYES ONLY designation as a sword and shield" as Rembrandt attempts here by alleging misappropriation of 171 confidential trade secrets (sword) but denying SeeCubic, Inc. access to those 171 trade secrets (shield). *DIRTT*, 2020 WL 6263039, at *2.

Moreover, the relief SeeCubic seeks is narrowly tailored. SeeCubic does not seek to de-designate Rembrandt's Trade Secret Disclosures so that the public can see them. Rather, SeeCubic

---

[3] During the meet and confer leading to this dispute, Rembrandt claimed it was willing to give full access of its Trade Secret Disclosure to Dr. Bart Barenbrug, an engineer with SeeCubic BV (a Stream subsidiary and non-party to this litigation) who allegedly was responsible for the disclosure of Rembrandt's trade secrets by publishing them in a publicly available patent application (*id.*), and other "technical" experts at SeeCubic BV. However, none of these individuals ever worked at SeeCubic, Inc., and thus giving access to these third parties does nothing to alleviate defendant SeeCubic, Inc.'s prejudice.

The Honorable Sherry R. Fallon
November 6, 2024

only seeks to de-designate those disclosures to the lower CONFIDENTIAL tier under the Protective Order (D.I. 56, ¶1.2) so that its CEO—who is mentioned ***twenty-eight (28) times*** in the Complaint (D.I. 1)—can access the disclosures so that he can properly confer with counsel about the allegations made against the company. Providing this limited access would not prejudice Rembrandt as it will still be able to protect its purported trade secrets from public disclosure via the provisions in the Protective Order. On the other hand, SeeCubic will be severely prejudiced if this access is not provided. Indeed, courts in this District have recognized a defendants' "need for a Senior Executive"—such as Mr. Stastney—"to participate in shaping their defense strategy, and to prepare a 30(b)(6) witness" in trade secret cases. *Qorvo, Inc. v. Akoustis Technologies, Inc.*, C.A. No. 21-1417-JPM, D.I. 313 (D. Del. Sept. 1, 2023) (allowing executive of defendant access to trade secret allegations marked AEO) (**Ex. G**).

*Second*, Rembrandt's position is contrary to the Protective Order entered by this Court and black-letter law. Paragraph 6.2 of the Protective Order permits "recipients" of AEO information, and those that otherwise "knew the information," to have access to that information. (D.I. 56, ¶ 6.2(g)). This makes sense since these individuals would have known about the information before the lawsuit was filed. As noted above, Rembrandt's Complaint is replete with accusations about SeeCubic's and Mr. Stastney's alleged knowledge of the purported trade secrets and the misappropriation thereof, and about Mr. Stastney's "receipt" of those purported trade secrets at the 2019 mediation between Stream and Rembrandt.[4] Assuming for the sake of argument that these allegations are true, Rembrandt's objection to Mr. Stastney seeing the information he is accused of knowingly misappropriating is baseless and against the clear provisions of the Protective Order.

Moreover, to prevail on its misappropriation claims under the Delaware Uniform Trade Secrets Act, Rembrandt will have to meet its burden to prove that defendant SeeCubic, Inc. "***knows*** or had reason to know that ***the trade secret*** was acquired by improper means" or "knew or had reason to know that that ***his or her knowledge of the trade [secret]*** was . . . [d]erived from or through a person who had utilized improper means to acquire it . . . ." *See* 6 *Del. C.* § 2001(2)(b). In other words, Rembrandt will need to show that someone at SeeCubic, Inc. (as opposed to someone employed by a third party, such as SeeCubic BV)[5] had "knowledge of the trade [secret]." *Id.* If Rembrandt truly believes that no one at SeeCubic, Inc. has knowledge of the 171 trade secrets listed in its disclosure, Rembrandt should be ordered to remove them from its disclosure since Rembrandt would not have a Rule 11 basis to accuse SeeCubic, Inc. (the only SeeCubic entity named as a defendant) of misappropriating them. On the other hand, if Rembrandt believes (as it alleged in its Complaint) that SeeCubic and Mr. Stastney have knowledge of the trade secrets and are allegedly misappropriating them, Rembrandt's objection to Mr. Stastney accessing its Trade Secret Disclosures is baseless per the plain language of the Protective Order.

For these reasons, SeeCubic respectfully requests that the Court allow SeeCubic's CEO, Mr. Stastney, to have access to the Trade Secret Disclosure upon service of an executed Acknowledgement and Agreement to Be Bound signed by Mr. Stastney.

---

[4] The alleged "knowledge" of SeeCubic's "misappropriation" necessarily involves knowledge of the trade secrets alleged to have been misappropriated.

[5] Because SeeCubic BV is not a party to this litigation, any knowledge that employees of SeeCubic BV have about the purported trade secrets are irrelevant to resolution of this motion.

The Honorable Sherry R. Fallon
November 6, 2024

                                                Respectfully,

                                                Benjamin J. Schladweiler (#4601)

cc. All Counsel of Record (via email)

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2024, true and correct copies of the foregoing document were caused to be served on the following counsel as indicated:

**VIA ELECTRONIC MAIL**
Andrew P. DeMarco
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
ademarco@devlinlawfirm.com

*Counsel for Plaintiff*

**VIA ELECTRONIC MAIL**
Christopher A. Michaels
BROWN & MICHAELS, PC
4th Floor, 118 N. Tioga St.
Ithaca, NY 14850
michaels@bpmlegal.com

*Counsel for Plaintiff*

**VIA ELECTRONIC MAIL**
Neil Wallace
3800 Oaks Clubhouse Dr., #206
Pompano Beach, FL 33064
ntwallace@aol.com

*Counsel for Plaintiff*

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)