# EXHIBIT B

| | |
|---|---|
| **From:** | Christopher Michaels <michaels@bpmlegal.com> |
| **Sent:** | Wednesday, October 23, 2024 12:03 PM |
| **To:** | Schladweiler, Benjamin (Shld-DEL-IP-Tech); Delcollo, Renee M. (Assoc-DEL-IP-Tech) |
| **Cc:** | ademarco@devlinlawfirm.com; dlflitparas@devlinlawfirm.com; ntwallace@aol.com; ggiovinazzo@devlinlawfirm.com |
| **Subject:** | RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures |

Ben:

I meant to include the following sentence:

"The Stream published patent application shows the use of borders and discusses blending (TS #2-4) but does not fully describe using Philips 2D switchable lens technology to accomplish this, however, the overall TS was included in the settlement agreement that has been filed in the court proceedings so the distinction about what is fully in the patent application is somewhat moot."

Chris


**Christopher A. Michaels**
*Registered Patent Attorney*
*Chief Executive Officer*



118 N. Tioga Street, Suite 400, Ithaca, New York 14850
Main: 607-256-2000  Fax: 607-256-3628
www.brownandmichaels.com

Email: michaels@bpmlegal.com
Direct Dial:  607-203-9470

Confidentiality Note: This email may contain confidential information that is subject to attorney-client privilege. If you received this email in error, please delete all message content from your system and notify sender.

---

**From:** Christopher Michaels <michaels@bpmlegal.com>
**Sent:** Wednesday, October 23, 2024 11:54 AM
**To:** schladweilerb@gtlaw.com; Renee.Delcollo@gtlaw.com
**Cc:** ademarco@devlinlawfirm.com; dlflitparas@devlinlawfirm.com; ntwallace@aol.com; ggiovinazzo@devlinlawfirm.com
**Subject:** Re: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

Ben:

I have attached a list of trade secrets that are not designated as AEO.  Everything else in the list is still designated as AEO.  These secrets were included generally in the settlement agreement that has been shared.

We have reviewed at length the trade secrets that were published in the Stream patent application and those secrets were only included in our list as parts of other detailed trade secrets which include elements that were not published. In other words, portions of each description are still secret, so remain AEO. You may of course share the published patent application as you see fit.

Chris


Get Outlook for iOS

---

**From:** schladweilerb@gtlaw.com <schladweilerb@gtlaw.com>
**Sent:** Tuesday, October 22, 2024 8:02:44 PM
**To:** Christopher Michaels <michaels@bpmlegal.com>; Renee.Delcollo@gtlaw.com <Renee.Delcollo@gtlaw.com>
**Cc:** ademarco@devlinlawfirm.com <ademarco@devlinlawfirm.com>; dlflitparas@devlinlawfirm.com <dlflitparas@devlinlawfirm.com>; ntwallace@aol.com <ntwallace@aol.com>; ggiovinazzo@devlinlawfirm.com <ggiovinazzo@devlinlawfirm.com>
**Subject:** RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

Counsel – Following up on this, please let us know your availability tomorrow to meet and confer. Since we objected to your AEO designation on October 14, we calculate that we must meet and confer by tomorrow based on Section 5.2 of the PO. We look forward to your prompt response.

Thanks

**Benjamin Schladweiler**
Shareholder

Greenberg Traurig, LLP
222 Delaware Avenue | Suite 1600 | Wilmington, DE 19801
T +1 302.661.7352
schladweilerb@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



---

**From:** Schladweiler, Benjamin (Shld-DEL-IP-Tech)
**Sent:** Monday, October 21, 2024 7:15 PM
**To:** 'Christopher Michaels' <michaels@bpmlegal.com>; Delcollo, Renee M. (Assoc-DEL-IP-Tech) <Renee.Delcollo@gtlaw.com>
**Cc:** ademarco@devlinlawfirm.com; dlflitparas@devlinlawfirm.com; ntwallace@aol.com; ggiovinazzo@devlinlawfirm.com
**Subject:** RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

Chris –

Please let us know your availability to meet and confer **tomorrow or Wednesday** about your deficient trade secret disclosures.

As I stated previously, your disclosures were due on October 11 (10 days ago), and you still have not provided us with a revised version that we can share with our client and have not committed to any timetable in which to do so. We understand Steve's medical issues, but this delay is unacceptable.

We believe that Rembrandt needs to amend its disclosures. Your alleged trade secrets ballooned from the three identified in the term sheet attached to your complaint to one hundred seventy-five. As you admit below, many of these alleged "secrets" were publicly disclosed in a series of patent applications filed by non-party Stream more than 9 years ago—well before SeeCubic Inc. came into existence in 2020. As such, these alleged "secrets" are no longer trade secrets under well-settled law. *Medtronic Vascular, Inc. v. Adv. Cardiovascular Sys., Inc.*, 2005 WL 388592, at *1, n.4 (D. Del. Feb. 2, 2005) ("[W]hen a patent is published containing a trade secret, it destroys the trade secret. Patents serve to 'put the world on notice' with respect to what the patentee claims to own; thus, any trade secret in a patent is no longer secret."). Moreover, you admit in your complaint that Rembrandt knew about the disclosures in these patent applications "in or about 2017" (D.I. 1, Ex. 1, ¶114)—i.e., more than 7 years ago. Thus, any action for misappropriation based on the information disclosed in those applications should have been filed by 2020. 6 *Del. C*. § 2006 (noting statute of limitations is three years from when misappropriation was discovered or should have been discovered).  alleged trade secrets. If Rembrandt does not agree to a timetable in which to amend its disclosures to remove such information, we intend to move to strike those disclosures and/or seek Rule 11 sanctions against Rembrandt As such, Rembrandt's claims relating to information disclosed in those patent applications is clearly time-barred. In other words, Rembrandt has no Rule 11 basis to claim that such information is a trade secret or that SeeCubic Inc. misappropriated the.

We also believe that Rembrandt cannot shield these disclosures from SeeCubic Inc. by designating them AEO. You allege in your complaint that SeeCubic Inc. misappropriated your alleged trade secrets. As you assuredly know, SeeCubic's "knowledge" of the alleged trade secret is a necessary element to Rembrandt's misappropriation claim. 6 *Del. C*. § 2001(2); *see You Map, Inc. v. Snap Inc.*, No. 20-162-CFC, 2022 WL 4377031, at *6 (D. Del. Sept. 22, 2022). In your complaint you repeatedly allege that Mr. Stastney and the "engineers" at SeeCubic "knew" of these trade secrets. (See, e.g., D.I. 1, ¶29 ("Stastney knew that he was trampling on R3D's ownership rights"); ¶121 ("Mr. Stastney had actual knowledge about the misappropriation"), ¶4 ("The trade secrets . . . are known to the engineers who work for . . . SeeCubic")). Indeed, you repeatedly claim that Mr. Stastney "knew" of these trade secrets when he signed the settlement term sheet attached to your complaint. (See id., ¶30, 121). If SeeCubic Inc. and/or Mr. Stastney "knew" about the trade secrets as you allege in your complaint, then pursuant to Paragraph 6.2(g) of the protective order, SeeCubic should have access to your disclosures describing what those trade secrets are. (*See* D.I. 56 at ¶6.2(g) (providing access to AEO materials to persons who otherwise "knew the information")). Moreover, access to what Rembrandt alleges is a "trade secret" is necessary to SeeCubic's defense in this action. How could SeeCubic defend itself without knowledge about what it is alleged to have misappropriated?

Please note that none of the individuals you mention below (Bart Barenbrug, Walther Rhoelen, and Hans Zuidema) ever worked for SeeCubic, Inc., and thus their "knowledge" of Rembrandt's alleged trade secrets cannot save Rembrandt's defective misappropriation allegations.

Please let us know when you are available to meet and confer on these issues so that we can promptly resolve them.

**Benjamin Schladweiler**
Shareholder

Greenberg Traurig, LLP
222 Delaware Avenue | Suite 1600 | Wilmington, DE 19801
T +1 302.661.7352
schladweilerb@gtlaw.com   |   www.gtlaw.com   |   View GT Biography

GT GreenbergTraurig

---

**From:** Christopher Michaels <michaels@bpmlegal.com>
**Sent:** Wednesday, October 16, 2024 4:45 PM
**To:** Schladweiler, Benjamin (Shld-DEL-IP-Tech) <schladweilerb@gtlaw.com>; Delcollo, Renee M. (Assoc-DEL-IP-Tech) <Renee.Delcollo@gtlaw.com>
**Cc:** ademarco@devlinlawfirm.com; dlflitparas@devlinlawfirm.com; ntwallace@aol.com;

ggiovinazzo@devlinlawfirm.com

**Subject:** RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

Ben and Renee:

As we were drafting the trade secret list, it was our general assumption that the entire document would be designated as "Attorneys Eyes Only." ("AEO")

Upon reflection, I realized that a small subset of the trade secret were published by Bart Barenbrug, Walther Rhoelen, and Hans Zuidema in the US patent application (Ser. No. 14/428,866) entitled "Depth Adjustment of an Image Overlay in a 3D Image" on March 17, 2015 claiming priority to a Dutch patent application (Ser. No. 2009616) with a filing date of Oct. 11, 2012, which applications disclose the Confidential Information in violation of their NDAs such as, for example, the border-blending and depth-smoothing functions or features described in at least paragraphs [0076], [0077], [0081], and [0082] of the 14/428,866 application. See Exhibit H, U.S. Patent Application Publication No. US 2015/0249817 A1. U.S. patent application 14/428,866 is owned by Stream's wholly owned subsidiary Ultra-D Coöperatief U.A. in Einhoven, Netherlands. We will remove the Attorneys Eyes Only designation from the trade secrets wrongfully published in the patent application.

This was described in the original federal complaint against Stream and as opposed to painting with a wide brush, we are working to designate appropriately. To be clear, our position is that Stream wrongfully used our trade secrets for years, then wrongfully published them and has incorporated the inappropriate benefit of that misappropriation into UltraD technology that Seecubic is trying to further transfer and sell. In other words, it is still appropriate to list these as actionable trade secrets, but since Shad's former company published them we will not designate the affected trade secrets as Attorneys Eyes Only.

While Steve was out of the hospital yesterday, we were only able to speak for a few minutes due to my schedule. We will be speaking today and this evening, but it is fair to say that the vast majority of the list was not included in the published patent application and will retain the Attorneys Eyes Only designation. We apologize for the delay, but it has been necessitated by a medical emergency, and we are working diligently to get you updated designations as soon as is practicable.

In no provision of the protective order, does it allow either party to redesignate from AEO simply because they would like a party that is in the hospital to respond more quickly. We are maintaining the AEO designation for all of the trade secrets except those mentioned above, please do not let Shad see information pertaining to AEO designated material.

With respect to the trade secrets being disclosed in the past, SeeCubic's former CTO, Bart Barenbrug, was aware of the secrets we have listed, but at no point did Shad work for an entity that had licensed access to these secrets. Bart signed an invention assignment and NDA and worked with Stephen Blumenthal for months. 3DFusion, Rembrandt, or Stephen Blumenthal have never agreed to provide access to Shad. While Shad negotiated the settlement agreement with Stream, it was not signed until after he left. To be clear, we do NOT believe that Shad had access to the secrets directly. If Shad had access to any of the trade secrets directly in the past, he is admitting to trade secret misappropriation and deeply implicating Bart Barenbrug in that misappropriation. It seems worthy of checking in with Shad on what he will actually say before we go further assuming Shad had prior knowledge of any of the detailed trade secrets we have sent you.

While we will all certainly learn more in discovery, our best understanding of the facts are that a group of engineers worked for Philips, then 3DFusion and its subsidiaries, then Stream/SCBV, then SeeCubic, and back to Stream/SCBV. At each employment, those engineers were required to assign their inventions to their employer and worked amongst others that also assigned their technology to their employers. Those engineers included their years of efforts along with the years of effort from people like Stephen Blumenthal into UltraD. While I am sure those engineers think of the technology as their own, those efforts are owned by Philps, 3DFusion/Rembrandt, or Stream related entities. To our knowledge, none of the technology is owned by the individual engineers and they are not free to use it as they see fit with each successive employer. Neither Shad or SeeCubic have a license from any of the owners of the technology that has gone into UltraD. Shad testified that the main use of his firm's initial investment in Stream was for Stream to obtain a license from

Philips. Clearly, Shad acknowledged the technology was not newly developed at Stream and Stream needed licenses from others to develop the technology. It is our understanding from the trustee for Stream that Shad has acknowledged that SeeCubic, Inc. has no rights to any technology developed by those engineers even when SeeCubic took control of SCBV years ago.

3DFusion licensed the technology from Philips, so while working for 3DFusion, all the engineers prior work was licensed from the rightful owner and new technology was owned by 3DFusion. We are obviously concerned about the technology owned by Rembrandt, but that is tied into the technology owned by Philips. Stream spent a long time developing the technology before Stream obtained a license from Philips and even longer from Rembrandt, but in the end all the executives at Stream agreed to license from both Philips and Rembrandt. Neither the Philips or Rembrandt licenses are assignable, so even if SeeCubic buys Stream's assets, what possible argument does SeeCubic have for not needing a license from Philips and Rembrandt to license out UltraD technology? It seems especially difficult to craft an argument if Shad is admitting that he has had full access to the details included in our trade secret list.

Further, Shad is a former director and CFO of Stream and then went off to start a competing entity. That fact alone pretty much sums up why we do not want Shad to have access to a list of trade secrets that would allow him to leave SeeCubic and start a new entity somewhere else in the world with our trade secrets in hand.

In sum, we do not agree that Shad should fall within the AEO review. I am happy to set up a meet and confer on the issue, but before we do, I ask that you discuss the general issue with Shad and/or his personal counsel to get their take and ask that attorney to join our conversation.

Chris


**Christopher A. Michaels**
*Registered Patent Attorney*
*Chief Executive Officer*



118 N. Tioga Street, Suite 400, Ithaca, New York 14850
Main: 607-256-2000  Fax: 607-256-3628
www.brownandmichaels.com

Email: michaels@bpmlegal.com
Direct Dial: 607-203-9470

Confidentiality Note: This email may contain confidential information that is subject to attorney-client privilege. If you received this email in error, please delete all message content from your system and notify sender.

---

**From:** schladweilerb@gtlaw.com <schladweilerb@gtlaw.com>
**Sent:** Wednesday, October 16, 2024 7:51 AM
**To:** Christopher Michaels <michaels@bpmlegal.com>; Renee.Delcollo@gtlaw.com
**Cc:** ademarco@devlinlawfirm.com; dlflitparas@devlinlawfirm.com; ntwallace@aol.com; ggiovinazzo@devlinlawfirm.com
**Subject:** RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures
**Importance:** High

Counsel – Rembrandt's trade secret disclosures were originally due on Oct. 4. We provided Rembrandt a courtesy extension to serve them and have been waiting a courtesy response as to whether we can share these with our client since last Friday and it has been radio silence on your end. **Please note that if you do not get back to us by 5 pm TODAY we will be providing these disclosures to Shad**. That should not be an issue since, as I explained previously, the PO provides that anyone who "knew the information" can have access to it. You allege that my client misappropriated your

trade secrets, and to prove that you will need to show that my client had knowledge of those secrets. Thus, providing Shad access to this information should not be an issue. We await your response.

**Benjamin Schladweiler**
Shareholder

Greenberg Traurig, LLP
222 Delaware Avenue | Suite 1600 | Wilmington, DE 19801
T +1 302.661.7352
schladweilerb@gtlaw.com   |   www.gtlaw.com   |   View GT Biography

**GT GreenbergTraurig**

---

**From:** Schladweiler, Benjamin (Shld-DEL-IP-Tech)
**Sent:** Tuesday, October 15, 2024 9:57 AM
**To:** 'Christopher Michaels' <michaels@bpmlegal.com>; Delcollo, Renee M. (Assoc-DEL-IP-Tech) <Renee.Delcollo@gtlaw.com>
**Cc:** 'Andrew DeMarco' <ademarco@devlinlawfirm.com>; 'DLF- Lit Paras' <dlflitparas@devlinlawfirm.com>; 'ntwallace@aol.com' <ntwallace@aol.com>; 'Gabrielle Giovinazzo' <ggiovinazzo@devlinlawfirm.com>
**Subject:** RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

Following up on this, please confirm that we may share this information with our client or please let us know when you can meet and confer today concerning the same.

**Benjamin Schladweiler**
Shareholder

Greenberg Traurig, LLP
222 Delaware Avenue | Suite 1600 | Wilmington, DE 19801
T +1 302.661.7352
schladweilerb@gtlaw.com   |   www.gtlaw.com   |   View GT Biography

**GT GreenbergTraurig**

---

**From:** Schladweiler, Benjamin (Shld-DEL-IP-Tech)
**Sent:** Monday, October 14, 2024 9:46 AM
**To:** 'Christopher Michaels' <michaels@bpmlegal.com>; Delcollo, Renee M. (Assoc-DEL-IP-Tech) <Renee.Delcollo@gtlaw.com>
**Cc:** Andrew DeMarco <ademarco@devlinlawfirm.com>; DLF- Lit Paras <dlflitparas@devlinlawfirm.com>; ntwallace@aol.com; Gabrielle Giovinazzo <ggiovinazzo@devlinlawfirm.com>; Zwally, Lisa M. (OfCnl-DEL-LT) <Lisa.Zwally@gtlaw.com>
**Subject:** RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

Chris – We are sorry to hear about Steve's medical issues and hope all is well. Are you able to get back to us with your position on the confidentiality of your trade secret disclosures today?

In addition, please confirm that we can share this list with Shad. Even if marked AEO, Paragraph 6.2(g) of the protective order allows access to AEO materials to persons who otherwise "possessed or knew the information," and we understand your contentions to be that Shad knew about your trade secrets. Please confirm at your earliest convenience.

Thanks,

**Benjamin Schladweiler**
Shareholder

Greenberg Traurig, LLP
222 Delaware Avenue | Suite 1600 | Wilmington, DE 19801
T +1 302.661.7352
schladweilerb@gtlaw.com   |   www.gtlaw.com   |   View GT Biography



---

**From:** Christopher Michaels <michaels@bpmlegal.com>
**Sent:** Friday, October 11, 2024 5:39 PM
**To:** Schladweiler, Benjamin (Shld-DEL-IP-Tech) <schladweilerb@gtlaw.com>; Delcollo, Renee M. (Assoc-DEL-IP-Tech) <Renee.Delcollo@gtlaw.com>
**Cc:** Andrew DeMarco <ademarco@devlinlawfirm.com>; DLF- Lit Paras <dlflitparas@devlinlawfirm.com>; ntwallace@aol.com; Gabrielle Giovinazzo <ggiovinazzo@devlinlawfirm.com>; Zwally, Lisa M. (OfCnl-DEL-LT) <Lisa.Zwally@gtlaw.com>
**Subject:** RE: C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

**\*EXTERNAL TO GT\***

Ben and Renee:

Steve has had some medical issues yesterday and today, so we did not have a chance to review the final list together before sending over.  Most of this list should be treated as "Attorney's Eyes Only" but some of the list does not warrant that designation.  Steve and I will parse the designations together as soon as we are able to review together.  In the interim, please treat the entire list as attorney's eyes only and we will send the parsed designations in the next few days.

Chris

**Christopher A. Michaels**
*Registered Patent Attorney*
*Chief Executive Officer*



118 N. Tioga Street, Suite 400, Ithaca, New York 14850
Main: 607-256-2000  Fax: 607-256-3628
www.brownandmichaels.com

*Email:* michaels@bpmlegal.com
*Direct Dial:* 607-203-9470

Confidentiality Note: This email may contain confidential information that is subject to attorney-client privilege. If you received this email in error, please delete all message content from your system and notify sender.

---

**From:** Gabrielle Giovinazzo <ggiovinazzo@devlinlawfirm.com>
**Sent:** Friday, October 11, 2024 4:49 PM
**To:** schladweilerb@gtlaw.com; Lisa.Zwally@gtlaw.com; Renee.Delcollo@gtlaw.com
**Cc:** Andrew DeMarco <ademarco@devlinlawfirm.com>; DLF- Lit Paras <dlflitparas@devlinlawfirm.com>; ntwallace@aol.com; Christopher Michaels <michaels@bpmlegal.com>
**Subject:** C.A. No. 23-cv-00193-JLH - Rembrandt v. SeeCubic - Trade Secret Disclosures

Counsel,

Please find attached Plaintiff Rembrandt 3D Holding Ltd.'s Trade Secret Disclosures for the above mentioned case.

Sincerely,
Gabrielle Giovinazzo



Gabrielle Giovinazzo
1526 Gilpin Ave, Wilmington, DE 19806
☐:(301) 643-0200

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.