# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HID GLOBAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1769 (GBW) |
| | ) | (CONSOLIDATED) |
| | ) | |
| VECTOR FLOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## SPECIAL MASTER ORDER REGARDING INTERROGATORY SUPPLEMENTATION

Having reviewed the letter briefs, exhibits and considering the arguments of the parties, I hereby order the following relief regarding the issues raised in the parties' motions to compel interrogatory responses dated May 5 and May 9, 2023:

(1) Plaintiff's Interrogatory Nos. 20 (Vector Flow ("VF")), 21 (VF), 22 (Individual Defendants ("ID")), and 23 (ID): Defendant stated, on the record, that no communications other than those described in the current responses exist. I cannot order Vector Flow to describe what it does not have, nor does Rule 26 require it. HID is free to further inquire about the communications addressed in these interrogatories at deposition with Vector Flow witnesses.

(2) Plaintiff's Interrogatory No. 18 (VF), 20 (ID): These interrogatories requests information concerning "Project Bob." While Vector Flow responds by referencing 33(d), the documents cited are not extensive, and include such things as spreadsheets that set forth the names and roles of those employees involved in Project Bob. *See*, *e.g.*, VF-000235850. While I agree that the spreadsheet discloses the names and roles of all persons involved with Project Bob, it does not provide a description of their roles on the project. I also understand that the source code further identifies the individuals who contributed to the source code related to Project Bob

and the nature and date of those contributions. That said, given the number of employees on this list, and the size of the source code, it seems reasonable and not burdensome for Vector Flow to supplement to include the responsibilities of each person listed on VF-000235850 as they relate to Project Bob. Moreover, to the extent there were individuals outside of Vector Flow that worked on Project Bob, those individuals should be identified in the supplementation. To the extent there were none, none need to be described. Such supplementation shall be completed by May 17, 2023.

Defendant's First Supplemental Response describes the purpose/goal of Project Bob. Moreover, Defendant stated in its supplemental response that Project Bob is the "same source code repository and Jira ticket account, just by different names, at different points in time." *See* Defendant's Supplemental Response to Interrogatory No. 18, at p. 88. Defendants have also stated on the record that "Project Bob" has no relationship to HID SAFE™. No more can be asked of Vector Flow to respond to that portion of the interrogatory.

(3) Plaintiff's Interrogatory Nos. 19 (VF), 21 (ID): I understand these requests to have been withdrawn during the hearing on May 10, 2023.

(4) Plaintiff's Interrogatory No. 15 (VF): Vector Flow's response to this interrogatory appeared to be based on a different reading of the grammatical structure of this interrogatory than HID intended. It is my understanding that Vector Flow has since produced all Vector Flow customer lists and identified all customers, regardless of whether they are also or were also a customer of HID. That said, like HID, I read this interrogatory to further request the identification of documents or discussions where Vector Flow compared its products to the HID SAFE™ product. Therefore, Vector Flow should supplement its response to include this relevant and responsive additional information whether through description or citation by Bates numbers

to produced documents, to the extent any exist. Such supplementation shall occur by May 17, 2023.

(5) Plaintiff's Interrogatory No. 12 (VF): Defendant was ordered by the Court to produce its source code, and by the Court and myself to produce all Jira tickets starting in 2019. Defendant has stated that it has no other source code in its possession, custody or control. While the Court was not aware of Vector Flow's communications with Innominds at the it made its ruling, that did not appear to matter since the request was so broad. Should there exist any device containing any portion of HID's source code, or Vector Flow's source code, whether within Vector Flow or outside of Vector Flow, that Vector Flow is aware of and has control over, it should be identified and produced. To the extent nothing further exists than what has already been identified and produced, no further supplementation is required. To the extent there is, Vector Flow must supplement by May 17, 2023. Vector Flow is not required to supplement its response to explain the process it took to respond to this interrogatory as such an answer would potentially disclose attorney work product or be subject to the attorney-client privilege.

(6) Defendant's Interrogatory Nos. 1 and 12: I am concerned by the lack of detail about HID's alleged trade secrets in its responses to these three interrogatories, particularly at this stage of the litigation. While HID provides 15 alleged trade secrets in its response to Interrogatory No. 1 (which incorporates by reference Interrogatory Response No. 14), these descriptions are to HID's source code generally or to broad portions or categories/features of HID's software, and often don't reference HID's source code or products at all. Instead, HID only references Vector Flow's alleged *misappropriation* by describing Vector Flow's products and assumes *ipso facto* that because HID believes that Vector Flow's source code was developed outside of the produced git repository and because Vector Flow developed its product

so quickly, by former HID employees, the source code must have been misappropriated. This information (e.g., Vector Flow's information) is not identifying HID's trade secret.

Even looking further at HID's response to Interrogatory No. 14, HID continues to primarily refer to its trade secret as "the source code for HID's SAFE™ product" and then goes on to describe specific aspects and files in *Vector Flow's* product, not its own. It also references its SQL tables generally. The response includes a list of HID SQL table names but does not provide where or at what lines in HID's source code those tables appear. It further does not state whether HID is contending that the table names, architecture, data, or structure, or all of it, is the trade secret. HID has the burden to articulate its trade secret claim. A defendant cannot formulate an effective defense to a trade secret misappropriation claim unless it is provided with "clear detail of what plaintiff claims is its trade secret." MILGRAM, R.M., MILGRIM ON TRADE SECRETS §16.01[5][b] (2005). A "description of a software methodology implementing 'features, functions, and characteristics of the design and operation' characterizes the 'underlying design' and not the information therein or related source code" and that is not sufficient. *Xpertuniverse, Inc. v. Cisco Sys.*, C.A. No. 09-157-RGA, 2013 U.S. Dist. LEXIS 32711, at *8 (D. Del. Mar. 8, 2013). Nor can a plaintiff "effectively assert[] that all information about [the plaintiff's] software is a trade secret." *Id.* at *8. If, as HID suggests in its responsive letter on this issue, it is "the SQL tables embedded in the HID SAFE™ source code" that is the trade secret, then, at a minimum HID must identify the portions of its source code where those tables are found and explain how those tables are trade secrets and not otherwise publicly available. While HID cites to a summary chart of Vector Flow source code files using SQL tables, it does not provide any reference to its own source code, functions, or line numbers showing its own SQL tables and instead only references them by what appears to be categorical

names. *See* Pltf. 5/9 Resp. Letter to S.M. at 1 and Ex. A, 83-84. HID must provide final supplemental responses to these interrogatories by May 17, 2023 that set forth with particularity the location of *its* trade secret(s) within *its* source code and describe with particularity and citations to *its* software what is actually being claimed as the trade secret and not refer generally to source code, or file names or categories or only reference Vector Flow's software. No further supplementation of this interrogatory will be permitted absent a showing of good cause.

(7) Defendant's Interrogatory Nos. 14 and 15: As with the response to Interrogatory Nos. 1 and 12, I order HID to supplement its responses to numbers 14 and 15 with specific lines or portions of both the HID source code and Vector Flow source code. It cannot reference the entirety of the Vector Flow source code as being misappropriated, or non-limiting examples. It must provide reference to specific portions of its trade secrets and the allegedly stolen portions of Vector Flow's code. Such supplementation will be final, absent a showing of good cause, and must be completed by May 17, 2023.

(8) Defendant's Interrogatory No. 18: I understand that on May 3 Plaintiff supplemented this response to include further information. Upon review of the supplementation, I do not find it needs further supplementation, however, if when supplementing Interrogatories 1 and 12 (or 14 and 15) HID believes further supplementation is required for its response to number 18, it is permitted, and should, so supplement. No further supplementation of this interrogatory following May 17, 2023 will be permitted absent a showing of good cause.

(9) Defendant's Interrogatory No. 4: Pursuant to the Court's Order at the October 28, 2022 hearing (Tr. at 5-6), HID must supplement its response immediately to include more detail concerning the specific amounts and theories of damages it intends to pursue in this matter based

on information HID has in its own possession, custody control and on information produced by Vector Flow to date. HID must supplement its response to identify, for example, what it contends constitutes the royalty base, the appropriate royalty rate, comparable licenses, and any further factual bases that support its damages contentions. Should Vector Flow produce more information in response to the ongoing meet and confers occurring between the parties, HID may supplement at that time, but an interim supplementation must be done before May 17, 2023.

(10) Plaintiff's Final Infringement Contentions: I will not strike Plaintiff's Final Infringement Contentions, but Plaintiff must supplement by May 17, 2023 to conform its contentions to Appendix A of Vector Flow's May 11, 2023 letter to the Special Master and include pinpoint citations to the source code and/or software, or to specific features of the software with citations to the documents produced in this matter. The contentions must be provided on an element-by-element basis and cannot merely repeat the claim language or cite to the entirety, or broad swaths, of the source code. HID may not use exemplary, general language for its contentions as such is not sufficient in this instance to put Vector Flow on notice of the claims being asserted against it. After May 17, 2023, no further supplementation may occur, and any expert report submitted in this matter must conform to these contentions.

DATED: May 13, 2023

*/s/ Karen E. Keller*
Special Master Karen E. Keller