# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REMBRANDT 3D HOLDING LTD., | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 23-193-JLH ) ) **JURY TRIAL DEMANDED** |
| TECHNOVATIVE MEDIA, INC. HAWK INVESTMENT HOLDINGS LTD., AND SEECUBIC, INC., | ) ) ) ) |
| Defendants. | ) ) |

### DEFENDANT SEECUBIC, INC.'S OBJECTIONS TO MAGISTRATE JUDGE FALLON'S ORAL ORDER DATED NOVEMBER 13, 2024

GREENBERG TRAURIG, LLP

Benjamin J. Schladweiler (#4601)
Lisa M. Zwally (#4328)
Renée Mosley Delcollo (#6442)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
(302) 661-7000
schladweilerb@gtlaw.com
lisa.zwally@gtlaw.com
renee.delcollo@gtlaw.com

*Attorneys for Defendant SeeCubic, Inc.*

Dated: November 25, 2024

**TABLE OF CONTENTS**

A. Rembrandt's Complaint ...................................................................................................1

B. The Current Dispute .......................................................................................................2

C. Additional Facts SeeCubic Would Have Raised In Response to Rembrandt's Opposition If It Was Given The Chance...................................................................................................3

D. Argument ........................................................................................................................5

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                    **Page(s)**

*DIRTT Env't Sols., Inc. v. Henderson*,
    2020 WL 6263039 (D. Utah Oct. 23, 2020) ...................................................................................5, 6

*I-Mab Biopharma v. Inhibrix, Inc.*,
    C.A. 22-276-CJB, D.I. 451 (D. Del. Oct. 14, 2024) .......................................................5, 10

*Martinez v. City of Ogden*,
    2009 WL 424785 (D. Utah Feb. 18, 2009) ..........................................................................5

*Silvaco Data Sys. v. Intel Corp,*
    184 Cal. App. 4th 210 (Cal. Ct. App. 2010) ........................................................................7

*Stream TV Networks, Inc. v. SeeCubic*,
    250 A.3d 1016 (Del. Ch. 2020) .........................................................................................4, 9

*Stream TV Networks, Inc. v. SeeCubic*,
    279 A.3d 323 (Del. 2022) .....................................................................................................4

*Wisk Aero LLC v. Archer Aviation Inc*.,
    2022 WL 3754521 (N.D. Cal. Aug. 30, 2022) .....................................................................6

**Other Authorities**

6 *Del. C.* § 2001 ...............................................................................................................................7

18 U.S.C. § 1832.............................................................................................................................7

28 U.S.C. § 636(b)(1)(A) ................................................................................................................6

Fed. R. Civ. P. 72(a) .......................................................................................................................6

On November 13, 2024, Magistrate Judge Fallon issued an Oral Order (the "Order") denying defendant SeeCubic, Inc.'s ("SeeCubic") CEO, Mr. Shadron Stastney, access to the list of the trade secrets his seven-employee company is alleged to have misappropriated. (D.I. 75). The Order violated SeeCubic's due process rights and largely adopted the factual and legal mischaracterizations from Rembrandt's responsive papers that SeeCubic was unable to rebut because the Order cancelled the scheduled hearing. While denying Mr. Stastney access, the Order granted third party Dr. Bart Barenbrug access to Rembrandt's trade secret list, concluding he was "associated with defendant SeeCubic, Inc." when he is not. The Order also adopted Rembrandt's rank attorney argument that Mr. Stastney's "lack[] of technical knowledge" was somehow relevant. It is not. *None* of SeeCubic's seven employees have "technical knowledge," and Mr. Stastney was the only SeeCubic employee involved in the events discussed in the Complaint. As the unrebutted law cited by SeeCubic shows, the only "knowledge" that matters is whether SeeCubic had the requisite knowledge of the trade secrets it is alleged to have misappropriated, a question only a SeeCubic employee like Mr. Stastney can answer. This law was ignored in the Order. Pursuant to Fed R. Civ. P. 72(a), SeeCubic respectfully objects to the Order.

**A. Rembrandt's Complaint:**

According to the Complaint, in 2017 Rembrandt discovered that Dr. Bart Barenbrug—an employee of 3DFusion EU B.V.[1]—a Dutch subsidiary of third-party Stream TV Networks Inc. ("Stream")—"filed a US patent application" in 2015 and a Dutch application in "October 11, 2012" that purportedly "disclose[d] [Rembrandt's] Confidential Information in violation of [his] NDA." (*Id.*). (D.I. 1, Ex. 1 ("SDNY"), ¶114). In response, Rembrandt filed a breach of contract

---

[1] 3DFusion EU B.V. later changed its name to SeeCubic, B.V. ("SCBV"). SCBV started as a Stream subsidiary when it formed in 2011, was briefly a subsidiary of SeeCubic, Inc. from December 2020 to June 2022, and then became a subsidiary of Stream (again) in June 2022 and has remained so to the present. **Exhibit A**, ¶4, Declaration of Shadron Stastney ("Decl., ¶ __.").

1

action (not trade secret misappropriation) against Stream for these purported NDA violations. (*Id.*)

The parties mediated the case on April 9, 2019. Stream was represented at the mediation by its then-CFO, Mr. Stastney (the current CEO of SeeCubic). (*Id.*, ¶26). At the conclusion of the mediation, the parties signed a nonbinding term sheet to "settle all disputes." (*Id.*, Ex. 5, ¶¶ 5, 9, 10). Schedule A of the term sheet listed three "trade secrets" that Rembrandt agreed to license as part of the settlement. (*Id.*, Ex. 5; D.I. 1, ¶80).

Rembrandt filed this action on February 21, 2023, asserting that SeeCubic misappropriated the three trade secrets listed in the term sheet. (D.I. 1). Rembrandt's Complaint relies heavily on Mr. Stastney's apparent knowledge of the "trade secrets" that he gained from his participation in the Stream mediation. (D.I. 1, ¶¶19, 20, 26, 29, 88, 121).

**B. The Current Dispute:**

On October 11, 2024, Rembrandt served its Disclosure of Trade Secrets pursuant to Paragraph 3 of the Scheduling Order (D.I. 71, Ex. A). These disclosures ballooned Rembrandt's asserted trade secrets from the *three* listed in its Complaint to a staggering *175*. Rembrandt maintains its HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY designation over *169* of these purported trade secrets, preventing anyone employed by SeeCubic from seeing the list of trade secrets it allegedly misappropriated. While refusing to give Mr. Stastney access to the list of trade secrets, Rembrandt stated its willingness to give Dr. Barenbrug such access despite claiming that he misappropriated the trade secrets in the first place. (D.I. 1, Ex. 1, ¶114).

On October 25, 2024, SeeCubic moved to resolve this dispute, arguing that Rembrandt's AEO designation violated SeeCubic's due process rights, and that someone at SeeCubic needed to know what the company was being accused of since knowledge of the underlying trade secret is a necessary element in any misappropriation action. (D.I. 67, 71). SeeCubic also noted that Dr. Barenbrug has never been a SeeCubic employee. (D.I. 71 at n.3).

In response, Rembrandt "agree[d] with defendant's legal argument" and "admitted that "defendant is entitled to know what they are accused of misappropriating." (D.I. 71 at 4). Nonetheless, Rembrandt wrongly claimed that Dr. Barenbrug could provide this knowledge because he was a SeeCubic "W-2 employee" (D.I. 74 at 2) and that "SeeCubic is paying the salary of Dr. Barenbrug" (D.I. 72 at 2). These allegations were based on attorney argument and: **(1)** a Private Place Memorandum ("PPM") SeeCubic issued in the Second Quarter of 2022—which, as explained below was during the brief time in which Dr. Barenbrug was employed by then-*subsidiary* of SeeCubic, SCBV (SCBV ceased being a subsidiary of SeeCubic in *June 2022*, before this suit was filed), and **(2)** statements made on the seecubic.com website when the website was owned, hosted, and controlled by SCBV, at a time it was a *Stream*, not SeeCubic, subsidiary. Overlooking its own lengthy allegations accusing Dr. Barenbrug of misappropriating its trade secrets, Rembrandt also argued that Mr. Stastney could not be trusted because of his alleged history "of breach[ing] fiduciary duties and attempting to take intellectual property of others." (D.I. 72 at 2-3). As explained below, these accusations are unproven and unrelated to any legitimate concerns.[2] SeeCubic was not given the opportunity to reply to these allegations. On November 13, 2024, the magistrate judge entered the Order, which largely adopted Rembrandt's flawed and unsupported arguments, and cancelled the scheduled hearing. (D.I. 75).

### C. Additional Facts SeeCubic Would Have Raised In Response to Rembrandt's Opposition If It Was Given The Chance

If SeeCubic was given the opportunity to properly respond to Rembrandt's mischaracterizations, it would have explained that SeeCubic has had only seven employees since

---

[2] On November 7, 2024, SeeCubic filed a Notice of Subsequent Fact notifying the Court that Rembrandt disclosed at least two of its purported trade secrets publicly on the docket in the Stream bankruptcy proceeding. (D.I. 73). In response, Rembrandt improperly provided further argument, well beyond the scope of the Notice of Subsequent Fact, regarding Mr. Stastney and Dr. Barenbrug and cited case law in support of its arguments for the first time. (*Compare* D.I. 74 *with* D.I. 72).

3

its formation in May 2020. (*See* Decl., ¶3; **Exhibit B**). None of those employees has any relevant technical knowledge. (Decl., ¶3). Dr. Barenbrug was never employed by SeeCubic (*Id.*) Indeed, the "website" referenced in the Order confirms this. (**Exhibit C** (stating Dr. Barenbrug has worked for "SeeCubic in Eindhoven"—i.e., SCBV—since its founding in 2011); D.I. 75; D.I. 72, Ex. E at 3, n.3). Moreover, Mr. Stastney is the only SeeCubic employee identified in Rembrandt's Complaint, and he is identified 26 times, mostly relating to his participation in the Stream mediation that forms the basis for Rembrandt's allegations concerning SeeCubic's knowledge of the trade secrets. (*See, e.g.*, D.I. 1, ¶¶20, 26, 29, 30-33, 79, 81-82, 84, 88, 121).

SCBV, the third-party entity that employs Dr. Barenbrug, is not a defendant in this case. (Decl., ¶5; **Exhibit B**). It is a Netherlands company, that has long been associated with third-party Stream. (*Id.*, ¶4). There was a brief period when the company was a subsidiary of SeeCubic—i.e., from December 8, 2020 (when the Court of Chancery awarded SeeCubic all of Stream's assets, including SCBV (*Stream TV Networks, Inc. v. SeeCubic*, 250 A.3d 1016, 1047 (Del. Ch. 2020)) to June 15, 2022 (when the Delaware Supreme Court reversed the Court of Chancery's decision on technical grounds (*Stream TV Networks, Inc. v. SeeCubic*, 279 A.3d 323, 355 (Del. 2022))—but it has been a Stream subsidiary since June 15, 2022. Recently, Mr. Stastney and the founders of Stream litigated for control of SCBV in the Netherlands. On June 29, 2023, the Dutch court resolved the dispute by appointing an independent director. (D.I. 27, ¶64). However, as described in SeeCubic's tortious interference counterclaims, Rembrandt threatened the independent director with baseless claims, chasing him away and leaving the company without a leader. (*Id.*, ¶¶65-73). Another control fight ensued, ending with the Dutch court appointing Mr. Stastney as director, finding him the most trustworthy person to protect SCBV's assets until the Stream bankruptcy is resolved. (**Exhibit D**). Although Mr. Stastney has been a director ever since, the company is still

a Stream (not a SeeCubic) subsidiary. (Decl., ¶4). At the time the PPM issued in "Q2 2022," SCBV was a subsidiary of SeeCubic, Inc. (*Id.*, ¶5). Thus, nothing in the PPM (such as identifying Dr. Barenbrug as a Senior Direct and Principal Engineer) was inaccurate.

SeeCubic would have further explained that it was not "found to be taking credit for Stream's achievements" on its "website" as Rembrandt alleged. (D.I. 72 at 3). Rembrandt cites to the TRO ruling in Stream's bankruptcy proceedings, but that ruling relied solely on the mischaracterizations in Rembrandt's papers as SeeCubic was not provided an opportunity to rebut those allegations. If given the opportunity, SeeCubic would have explained that the seecubic.com website was, and always has been, hosted and controlled by SCBV, not SeeCubic, as shown by the contact information shown on the site. (*See* **Exhibit E**; Decl., ¶6). Thus, any statements or exaggerations on that website were not made by anyone at SeeCubic.

### D. ARGUMENT

The Order violates SeeCubic's due process rights to know the allegations levied against it because it effectively prevents any SeeCubic employee from accessing the list of trade secrets while authorizing access to a third-party. Indeed, Rembrandt "agrees with defendant's legal argument" that SeeCubic "is entitled to know what they are being accused of misappropriating." (D.I. 72 at 4; *see also* D.I. 71 at 3 (citing *I-Mab Biopharma v. Inhibrix, Inc.*, C.A. 22-276-CJB, D.I. 451 (D. Del. Oct. 14, 2024) ("defendants who are alleged to have engaged in trade secret misappropriation should be permitted to review the core trade secret material they purportedly accessed/misused, at some point prior to trial, so that they are given a fair opportunity to prepare a defense for trial and intelligently respond to the evidence against them"); *Martinez v. City of Ogden*, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) ("Defendants' request to keep information from Plaintiff implicates Plaintiff's due process rights to have a full and fair opportunity to litigate."); *DIRTT Env't Sols., Inc. v. Henderson*, 2020 WL 6263039, at *4 (D. Utah Oct. 23, 2020)

(denying AEO designation to disclosure of trade secrets because "[i]t would be inherently unfair to allow Plaintiff to assert" trade secret misappropriation "without allowing Defendant to test this assertion"); *Wisk Aero LLC v. Archer Aviation Inc.*, 2022 WL 3754521, at *4 (N.D. Cal. Aug. 30, 2022) ("[Plaintiff's] position does not adequately account for [Defendant's] need to discover information from witnesses that [Plaintiff] itself has identified as having percipient knowledge about the trade secrets at issue")). Given this concession, the only issue this Court must decide is whether the Order provides SeeCubic with the requisite knowledge of the allegations made against it. SeeCubic respectfully submits that it does not.

At least six of the Order's findings were "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

The first error the Order made was concluding that Dr. Barenbrug was an employee of SeeCubic (D.I. 75). The Order reaches this conclusion by adopting wholesale Rembrandt's arguments (that SeeCubic did not get a chance to rebut) that statements allegedly made "on Defendant's own website" indicated Dr. Barenbrug was "a part of SeeCubic's leadership team in his role as 'Senior Director & Principal Engineer [of] Emerging Technologies.'" (*Id.*) But as explained above, seecubic.com is SCBV's (not SeeCubic's) website, and the PPM cited for this conclusion was issued during the brief time in which Dr. Barenbrug worked for SeeCubic's subsidiary. (Decl., ¶¶5-6). At the time this suit was filed, Dr. Barenbrug worked for (and still works for) a subsidiary of Stream, as evidenced by the very website cited by the Order. (**Exhibit B** (stating Dr. Barenbrug worked for "SeeCubic in Eindhoven"—i.e., SCBV—since its founding in "2011")). As explained above, SeeCubic has only ever had seven employees since its formation in 2020, none of which are Dr. Barenbrug. (**Exhibit B**; Decl., ¶3).

The second error the Order made was assuming that "technical knowledge" of the trade

6

secrets is a prerequisite for someone to see the list of trade secrets. This conclusion was taken wholesale from Rembrandt's response to which SeeCubic did not get an opportunity to respond. Neither Rembrandt nor the Order cite any caselaw for such a novel proposition. At the same time, both Rembrandt and the Order ignore the unrebutted law cited by SeeCubic which makes clear that SeeCubic's knowledge of the *trade secrets is* required for misappropriation. (D.I. 77 at 4; 6 *Del. C.* § 2001 (Rembrandt has burden to prove SeeCubic "***knows*** or had reason to know that ***the trade secret*** was acquired by improper means" or "***knew*** or had reason to know that that ***his or her knowledge of the trade secret*** was . . . [d]erived from or through a person who had utilized improper means to acquire it . . . ."); *see also Silvaco Data Sys. v. Intel Corp,* 184 Cal. App. 4th 210, 224-25 (Cal. Ct. App. 2010) (noting that "four" of the "varieties of actionable 'use'" under the Universal Trade Secrets Act "***unmistakably require the defendant to have 'knowledge of the trade secret'***"—i.e., §2001(2)(a), (b)(1), (b)(2), (b)(3)—and the fifth—i.e., §2001(3)—applies when the trade secret was "acquired by ***accident or mistake***," and Rembrandt does not allege acquisition by mistake)).[3] Such knowledge can only come from an employee of SeeCubic. As SeeCubic explained, the Protective Order provides that anyone with such knowledge or who was otherwise in "receipt" of the trade secrets is allowed to see them. (D.I. 56, ¶6.2(g)).

The <u>third error</u> the Order made was assuming that other employees of SeeCubic would be an appropriate replacement for Mr. Stastney. As explained above, SeeCubic only has seven employees, and none of them have a technical background. (**Exhibit B;** Decl., ¶3). Mr. Stastney is the only one of those seven who is mentioned in the Complaint, and he is mentioned **26 times** as the alleged source of SeeCubic's knowledge of the trade secrets through his participation in the

---

[3] Rembrandt does not allege that SeeCubic violated any Federal statute—e.g., 18 U.S.C. §1832—and instead bases its misappropriation claims on the Delaware version of the Universal Trade Secret Act and bases this Court's jurisdiction on "diversity pursuant to 28 U.S.C. §1332." (D.I. 1, ¶¶8, 126).

Stream mediation. (*See, e.g.*, D.I. 1, ¶¶20, 26, 29, 30-33, 79, 81-82, 84, 88, 121).

The fourth error the Order made was assuming that some non-SeeCubic employee would be an adequate substitute for Mr. Stastney. In its responsive papers Rembrandt claimed that Dr. Barenbrug or some other "independent expert" would be a more appropriate choice than Mr. Stastney (D.I. 71 at 1; D.I. 74), and this argument was adopted at least in part by the Order. But a non-employee of SeeCubic, no matter their technical acumen, could not help SeeCubic determine whether it had knowledge of the trade secrets, which as described above is a prerequisite for Rembrandt's misappropriation claims. Rembrandt's allegations concerning SeeCubic's knowledge have been all over the map. For instance, in its responsive papers, Rembrandt claims SeeCubic is "fully aware that the trade secrets they misappropriated are the same trade secrets Mr. Stastney licensed for Stream in 2019" (D.I. 71 at 4), while also arguing that "Mr. Stastney . . . never had any specific knowledge" of the trade secrets that were licensed (*id*. at 3-4). Rembrandt fails to explain how Mr. Stastney can be "fully aware" and completely ignorant at the same time. SeeCubic certainly does not have to take Rembrandt at its word as to what Mr. Stastney or SeeCubic knew. Unless Rembrandt is willing to stipulate that Mr. Stastney and other employees of SeeCubic do not have knowledge of Rembrandt's trade secrets (which to date Rembrandt has refused to do, see **Exhibit F**), SeeCubic has the due process right to defend itself by testing Rembrandt's inconsistent knowledge allegations. The only way to test those allegations is to give Mr. Stastney access to the list of trade secrets his company is alleged to have misappropriated.

The fifth error the Order made was assuming that Mr. Stastney could not be trusted with Rembrandt's trade secrets whereas Dr. Barenbrug could. In its Complaint, Rembrandt accuses Dr. Barenbrug of breaching his NDA with Rembrandt's predecessor and misappropriating its trade secrets by publishing them in a publicly available patent application. (*See* D.I. 1, Ex. 1 at ¶114).

8

At that time Dr. Barenbrug was employed by a Stream subsidiary, and thus Rembrandt sued Stream for this alleged breach of contract. (D.I. 1, Ex. 1). Rembrandt also alleges that Dr. Barenbrug made "false" statements under oath about whether there was a valid NDA. (D.I. 19 at 1, 3).

While Rembrandt makes similar claims against Mr. Stastney in its responsive papers, many of those arguments are the focus of the allegations in this action, and it should be obvious that Rembrandt cannot keep SeeCubic from knowing the allegations made against it by using those same allegations as its reason for doing so. (D.I. 72 at 2-3). All Rembrandt's other allegations are unproven, confusing, and/or have nothing to do with misappropriation. For instance, Rembrandt alleges that Mr. Stastney cannot be trusted because he did not mention Rembrandt's trade secret claims in SeeCubic's PPM, claiming that "he clearly understood Rembrandt's claims needed to be disclosed," yet Rembrandt fails to explain why he would have mentioned these trade secrets if he did not know what those trade secrets were. (*Id*. at 2). Rembrandt also relies on the Delaware Supreme Court decision "rendering the Omnibus Agreement void ab initio" (*id*. at 2), but fails to mention that it was decided on technical grounds and that the Court of Chancery previously upheld the same Omnibus Agreement. *Stream TV Networks, Inc.*, 250 A.3d at 1047. Similarly, the "breaches of fiduciary duty" and "conflicts of interest" mentioned in Rembrandt's responsive papers have nothing to do with misappropriating trade secrets. (D.I. 72 at 2). Lastly, the Order relies on the TRO issued in the Stream bankruptcy as evidence of Mr. Stastney's actions but fails to consider that the TRO issued on an admittedly incomplete record without giving SeeCubic the full opportunity to respond. (*Id*., Ex. E, ¶4). As noted above, the allegations concerning the statements on seecubic.com cannot be attributed to SeeCubic since it does not own, control, or host that website, and never has. (Decl., ¶6). Also, Rembrandt's allegations that "it was found that Mr. Stastney applied to register a trademark that he knew to be owned by Stream" is false, as

9

the TRO mentions nothing about Mr. Stastney's knowledge of Stream's mark. (*Id*., Ex. E, ¶3b).

Moreover, the Dutch court that presided over Stream's and SeeCubic's fight over SCBV appointed Mr. Stastney as director of SCBV over the founders of Stream, finding that "his appointment is the only option available to maintain the status quo"—i.e., to protect SCBV's assets—until the U.S. courts finally determine who has control over those assets (**Exhibit D, ¶5.20**). The Dutch court did so over the same objections Rembrandt raises now, further demonstrating that Rembrandt's alleged concerns over Mr. Stastney are unfounded.

The sixth and most concerning error the Order made was downplaying the severe prejudice to SeeCubic and ignoring the many solutions available that would not violate due process. Indeed, SeeCubic's "legal argument" that "Plaintiff agrees with" (D.I. 72 at 4)—*i.e.*, that "defendants who are alleged to have engaged in trade secret misappropriation should be permitted to review the core trade secret material they purportedly accessed/misused . . . so that they are given a fair opportunity to prepare a defense for trial and intelligently respond to the evidence against them" (*I-Mab Biopharma*, C.A. 22-276-CJB, D.I. 451 (cited at D.I. 71, Ex. D))—was not addressed by the Order. Tellingly, Rembrandt and the Order cite no case in which a "court took a position like the one Plaintiff puts forward here (i.e., that a defendant . . . should not be permitted to view the trade secrets at issue at any point in the case . . . )." *Id*. The Order also failed to consider other solutions suggested by the caselaw SeeCubic cites that do not violate SeeCubic's due process rights, such as granting Mr. Stastney access for a limited "time period," that he "only be permitted to view the material with counsel," and that "he may not take notes of the material nor retain any copies." *Id*.

For these reasons, SeeCubic respectfully requests that the Court sustain its objections to the Order.

GREENBERG TRAURIG, LLP

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
Lisa M. Zwally (#4328)
Renée Mosley Delcollo (#6442)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
(302) 661-7000
schladweilerb@gtlaw.com
lisa.zwally@gtlaw.com
renee.delcollo@gtlaw.com

*Attorneys for Defendant SeeCubic, Inc.*

Dated: November 25, 2024

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| REMBRANDT 3D HOLDING LTD., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TECHNOVATIVE MEDIA, INC. HAWK ) <br> INVESTMENT HOLDINGS LTD., AND ) <br> SEECUBIC, INC., ) <br> ) <br> Defendants. ) | C.A. No. 23-193-JLH <br><br> **JURY TRIAL DEMANDED** |

## CERTIFICATION PURSUANT TO STANDING ORDER FOR OBJECTIONS FILED UNDER FED. R. CIV. P. 72

Defendant SeeCubic, Inc. ("SeeCubic") hereby certifies that it has complied with the District of Delaware's Standing Order for Objections Filed Under Fed. R. Civ. P. 72. SeeCubic's objections to Magistrate Judge Sherry R. Fallon's Oral Order Dated November 11, 2024 do not raise new legal or factual arguments. Rather, SeeCubic has presented arguments in response to factual and legal mischaracterizations presented in Plaintiff Rembrandt 3D Holding Ltd.'s ("Rembrandt") responsive letter briefing. To the extent any of these arguments are considered new, there is good cause to present them now because SeeCubic was not previously able to fully address all of Rembrandt's mischaracterizations given the cancellation of the hearing that had previously been scheduled for November 13, 2024. *See* Oral Order D.I. 75.

12

GREENBERG TRAURIG, LLP

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
Lisa M. Zwally (#4328)
Renée Mosley Delcollo (#6442)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
(302) 661-7000
schladweilerb@gtlaw.com
lisa.zwally@gtlaw.com
renee.delcollo@gtlaw.com

*Attorneys for Defendant SeeCubic, Inc.*

Dated: November 25, 2024