**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

REMBRANDT 3D HOLDING LTD,

         Plaintiff,

      v.

TECHNOVATIVE MEDIA, INC, HAWK
INVESTMENT HOLDINGS LTD., and
SEECUBIC, INC.,

         Defendants.

C.A. No. 1:23-cv-00193-JLH-SRF

**JURY TRIAL DEMANDED**

**RESPONSIVE LETTER TO THE HONORABLE SHERRY R. FALLON**
**CONCERNING SEECUBIC, INC.'S MOTION TO COMPEL**

Dated:  May 13, 2025

DEVLIN LAW FIRM LLC
Andrew DeMarco (No. 6736)
1526 Gilpin Avenue
Wilmington, DE 19806
Phone: (302) 449-9010
Fax: (302) 353-4251
ademarco@devlinlawfirm.com

*Attorney for Plaintiff*
*REMBRANDT 3D HOLDING LTD*



1526 Gilpin Avenue
Wilmington, Delaware 19806
United States of America
Tel: 302-449-9010
Fax: 302-353-4251
www.devlinlawfirm.com

Dear Judge Fallon:

      Plaintiff Rembrandt 3D Holding Ltd. respectfully replies the defendant's letter & motion to compel dated May 12, 2025.  I attach hereto a responsive letter from Rembrandt's lead counsel.

                    Respectfully submitted,


                    */s/ Andrew DeMarco*
                    Andrew DeMarco (No. 6736)

cc:     Clerk of the Court (via CM/ECF)
        All Counsel of Record (via CM/ECF)

Dear Judge Fallon:

SeeCubic's letter-motion should be denied.

## Factual Background

This lawsuit arises out of the defendant's misappropriation of plaintiff's trade secrets and infringement of its patents. The technology which allows market-ready 3D no glasses viewing was invented and patented by Stephen Blumenthal. The technology also included trade secrets which Rembrandt has assiduously maintained confidentiality thereto. Rembrandt's conduct has been consistent. It has always acted to protect its intellectual property. Everything Rembrandt has done was and is for this sole purpose.

After Stream TV Networks misappropriated Rembrandt's trade secrets and infringed on the patents, Rembrandt sued Stream to prevent Stream from using its technology. At a Settlement Conference in front of a federal magistrate, the parties agreed to terms providing a license to Stream for both monetary and product consideration. The negotiations were conducted pursuant to a Stipulation and Proposed Protective Order and Confidentiality Agreement which the plaintiff has a legal duty to obey. (Stipulation attached as Exh. "A". Confidentiality Agreement attached as Exh. "B").

The May, 2021 Settlement Agreement complies with the court's decision and is virtually identical to the earlier term sheet agreement negotiated and signed by Mr. Stastney. Mr. Stastney and SeeCubic now seem to have a problem with an agreement that he negotiated. Mr. Stastney recognized and confirmed that Stream needed a license to use Rembrandt's technology and agreed to pay $5.8 million and provide 3.3 million TVs at cost. SeeCubic has not denied these facts.

**SeeCubic's RFP's:** To the extent Defendant seeks documents related to the settlement negotiations, plaintiff is under a federal court order to keep them confidential. Plaintiff has no authority to violate the Order nor has the defendant sought to dissolve it. Nor has the defendant sought to obtain consent from Stream or its officers.

Contrary to defendant's assertion, plaintiff's Common Defense Agreement was with Visual Technology Innovations, Inc. (VTI), not with Visual Semiconductor, Inc. (VSI). (Agreement attached as Exh. "C").

Plaintiff made a good faith effort to resolve these issues summarized by the email from Chris Michaels, counsel for Rembrandt, to Ben Schladweiler and Renee Delcollo, counsel for SeeCubic. (Email attached as Exh. "D").

Plaintiff also notes that Defendant's statement that the Licensing Covenant was designed to prevent SeeCubic from entering the 3D no glasses market is demonstrably false. The Agreement does not in any way prevent or hinder SeeCubic. It simply prevents

Rembrandt from licensing its technology to SeeCubic. SeeCubic was and is free to enter the market with its own technology.

**Further, SeeCubic should voluntarily dismiss its tortious interference counterclaim.**

SeeCubic has alleged that Rembrandt tortiously interfered with SeeCubic's ability to collect a $37 million debt it claimed was owed to it by SeeCubic B.V. SeeCubic has not provided any evidence that Rembrandt had any knowledge of this alleged debt prior to SeeCubic's allegation.

SeeCubic has acquired control and ownership of SeeCubic B.V. pursuant to being the successful Stalking Horse bidder in the Stream bankruptcy. Since it now owns the debtor, the debt is now a bookkeeping entry and SeeCubic was not injured even if it can show the other elements, which it cannot. Any documents related to the counterclaim are mooted even if they were previously material and not subject to a court order.

Respectfully submitted,

*/s/ Neil Wallace*
Neil Wallace
*Counsel for Plaintiff*
*Rembrandt 3D Holding Ltd*

cc:    Clerk of the Court (via CM/ECF)
        All Counsel of Record (via CM/ECF)