**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| REMBRANDT 3D HOLDING LTD., Plaintiff, | ) | |
| v. | ) | Civil Action No. 23-193-JLH-SRF |
| TECHNOVATIVE MEDIA, INC., HAWK INVESTMENT HOLDINGS LTD., and SEECUBIC, INC., Defendants. | ) | |

## MEMORANDUM ORDER

At Wilmington this **16th** day of **July, 2026**, the court having considered the parties' discovery dispute letter submissions and associated filings (D.I. 138; D.I. 139; D.I. 140; D.I. 141), as well as the arguments presented during the teleconference on July 14, 2026, IT IS ORDERED that the disputes raised in the pending joint motion for teleconference to resolve discovery disputes, (D.I. 136), are resolved as follows:

**1. Background.** In this civil action for trade secret misappropriation, plaintiff Rembrandt 3d Holding Ltd. ("Rembrandt") claims that defendant SeeCubic, Inc. ("SeeCubic")[1] misappropriated its trade secrets for glasses-free 3D display technology. According to the complaint, Rembrandt's CEO, Stephen Blumenthal, discovered 3D no glasses technology and acquired patents regarding the technology. (D.I. 1 at ¶¶ 11, 58) Rembrandt alleges that its trade secrets are embedded in technology that is known by engineers who worked for Blumenthal at Rembrandt's predecessor company and who subsequently worked for SeeCubic. (*Id.* at ¶ 4)

---

[1]Defendants Technovative Media Inc. and Hawk Investment Holdings Ltd. were voluntarily dismissed from the case in April of 2026. (D.I. 125; D.I. 126)

**2.** In this dispute, Rembrandt seeks discovery from SeeCubic regarding SeeCubic B.V. ("SCBV"), which is currently a wholly owned subsidiary of SeeCubic. SCBV was formed in the Netherlands in 2011 as a subsidiary of Stream TV ("Stream"). (D.I. 78, Ex. A at ¶ 4) Shadron Stastney served as Stream's chief financial officer from 2018 to January of 2020.[2] In that capacity, Stastney negotiated a 2019 settlement term sheet on behalf of Stream acknowledging Rembrandt's intellectual property and trade secret rights. (D.I. 1 at ¶ 20)

**3.** Stastney formed SeeCubic in May of 2020.[3] At that time, Stream and SeeCubic entered into an Omnibus Agreement stating that Stream would transfer all its assets to SeeCubic. (D.I. 1, Ex. 3 at 2; D.I. 78, Ex. A at ¶ 3) In September of 2020, Stream filed an action in the Delaware Court of Chancery seeking a declaration that the Omnibus Agreement was invalid and an injunction against SeeCubic's efforts to enforce it. (D.I. 1, Ex. 3 at 3) In December of 2020, the Court of Chancery denied Stream's request for relief and enjoined Stream from failing to comply with the agreement. (*Id.*) After the Court of Chancery issued the injunction, SeeCubic acquired Stream's assets. (*Id.*) SeeCubic contends that the transfer included title to SCBV, but it denies receiving SCBV's assets or documents under the Omnibus Agreement. (7/14/2026 Tr.)

**4.** In June of 2022, the Delaware Supreme Court invalidated the Omnibus Agreement, and SCBV again became a subsidiary of Stream. (D.I. 1, Ex. 3 at 4) SeeCubic contends that Stastney served as SCBV's director from December of 2020 until the Omnibus Agreement was invalidated in June of 2022. (D.I. 78, Ex. A at ¶ 4)

---

[2] Without citation to the record, SeeCubic represents that Stastney served as Stream's chief financial officer ("CFO") from 2018 to January of 2020. (D.I. 141 at 1)

[3] The complaint does not specify when SeeCubic was formed, although a declaration from SeeCubic's CEO, Shadron Stastney, represents that it was formed in May of 2020. (D.I. 1 at ¶ 20; D.I. 78, Ex. A at ¶ 3)

5. After Stastney formed SeeCubic, he allegedly pursued control of the same 3D no glasses technology without a license from Rembrandt. (D.I. 1 at ¶¶ 20, 121) As a result, Rembrandt filed this case on February 21, 2023 and moved for a temporary restraining order on April 12, 2023. (D.I. 1; D.I. 13) When this case was filed, SCBV was a subsidiary of Stream, and Rembrandt argued it would be irreparably harmed if SeeCubic assumed control over SCBV from Stream. (D.I. 15 at 16-17)

6. At the July 14, 2026 hearing, SeeCubic stated that Stream filed for bankruptcy in 2023. (7/14/2026 Tr.) As a result of the bankruptcy petition, SCBV was held by the bankruptcy trustee until January 3, 2025, when SeeCubic purchased Stream's assets in a bankruptcy sale. (D.I. 141, Ex. 1) SeeCubic represents that its relationship with Stream has been adverse since Stream commenced its bankruptcy proceeding in 2023, and it alleges that "Rembrandt and Stream have colluded together since before this lawsuit was filed." (D.I. 141 at 2)

**REMBRANDT'S DISPUTES**

7. **Rembrandt's motion to compel SeeCubic to prepare and produce Stastney for a 30(b)(6) deposition on SCBV[4] is DENIED without prejudice.** Fact discovery in this case closes on July 24, 2026. (D.I. 131) On June 17, 2026, Rembrandt served a Rule 30(b)(6) notice of deposition on SeeCubic. (D.I. 138, Ex. D) The deposition notice provides that the 30(b)(6) designee should be prepared to answer questions regarding SeeCubic's wholly owned subsidiary, SCBV. (*Id.*, Ex. D at A) SeeCubic identified Stastney as its 30(b)(6) designee. (*Id.*, Ex. C) Stastney currently serves as SCBV's chief executive officer and sole director. (D.I. 138 at 1-2)

[4] The relief requested by Rembrandt is limited to 30(b)(6) testimony specifically about SCBV. There is no ripe dispute to preclude a 30(b)(6) deposition of SeeCubic from going forward on other topics.

**8.** Rembrandt compares its effort to depose SeeCubic on 30(b)(6) topics concerning SCBV to the facts before the court in *Ethypharm S.A. France v. Abbott Laboratories*, 271 F.R.D. 82 (D. Del. 2010). There, the defendant objected to producing a 30(b)(6) witness on topics regarding its foreign wholly-owned subsidiary that predated the defendant's acquisition of the subsidiary. *Id.* at 92. The defendant did not dispute its control over the foreign subsidiary and did not suggest that it lacked access to information regarding its subsidiary. *Id.* at 93. Instead, it argued only that the plaintiff should not be permitted to compel the testimony of the foreign subsidiary under Rule 30(b)(6). *Id.* Noting that the 30(b)(6) topics were directed to the defendant, and not the subsidiary, the court held that the defendant was in a position to offer 30(b)(6) testimony regarding its foreign subsidiary. *Id.* at 95-96.

**9.** The record before the court suggests that, compared to the defendant in *Abbott*, SeeCubic has less access to SCBV's documents going back more than a decade. SeeCubic claimed some level of control over SCBV from December of 2020 to June of 2022 before Stream once again assumed control after the Delaware Supreme Court invalidated the Omnibus Agreement. During the teleconference on July 14, 2026, counsel for SeeCubic indicated that its rights were limited to SCBV's title, and it did not have access to SCBV's documents or assets during this period. (7/14/2026 Tr.) Counsel also relayed SeeCubic's understanding that Stream destroyed many of SCBV's documents. (*Id.*) When SeeCubic acquired SCBV through Stream's bankruptcy sale in 2025, counsel for SeeCubic confirmed that it obtained SCBV's source code, but asserts that other responsive documents and information from SCBV are not in its possession, custody or control. (*Id.*)

**10.** In sum, SCBV has changed hands between Stream and SeeCubic on more than one occasion, and the carryover of information from one parent company to the other has been

complicated by SeeCubic's contentious relationship with Stream and Rembrandt. On this record, Rembrandt has not demonstrated that the 30(b)(6) testimony it seeks from Stastney is "known or reasonably available" to SeeCubic. Fed. R. Civ. P. 30(b)(6).

**11.** Rembrandt's delay in seeking this discovery also undermines its position that the testimony is critical to the case. Although Rembrandt now contends that testimony on SCBV is highly relevant and it identified SCBV as a relevant third party in its initial disclosures, Rembrandt did not pursue testimony from Stream or SCBV by way of a subpoena before SCBV was re-acquired by SeeCubic in January of 2025.[5] As a result, this case is distinguishable from *Abbott*, 271 F.R.D. at 89, where the plaintiff subpoenaed the subsidiary for information before the subsidiary was acquired by the defendant. Rembrandt's delay in seeking this information weighs against its position that the testimony is critical to the case.

**12.** Rembrandt's opening letter submission suggests that the information it seeks in the 30(b)(6) deposition is focused on the technical aspects of Rembrandt's trade secrets. (D.I. 138 at 2) However, Rembrandt already deposed SCBV employee Bart Barenbrug on the technical aspects of the technology and has an opportunity to depose him again. (*Id.*; 7/14/2026 Tr.) Rembrandt emphasizes Stastney's dual role as CEO of both SeeCubic and SCBV, but his involvement in SCBV has not been continuous since 2010, and Rembrandt does not establish that Stastney has ready access to all SCBV information from 2010 to the present despite changes in control over the entity as described in paragraphs 2, 3, 4, and 6, *supra*.

**13.** To the extent that Rembrandt wishes to question Stastney about his negotiation of a 2019 settlement term sheet with Stream, SeeCubic confirms that it has no objection to

---

[5] From the time this case was filed in February of 2023 to SeeCubic's purchase of Stream's assets in bankruptcy on January 3, 2025, SCBV was not a subsidiary of SeeCubic. *See* ¶¶ 5-6, *supra*.

Rembrandt asking Stastney about the subject in his individual capacity as Stream's former CFO. (D.I. 141 at 3 n.3) Therefore, IT IS ORDERED that Rembrandt is granted leave to depose Stastney under Rule 30(b)(1) in accordance with SeeCubic's offer.

**14. Rembrandt's motion to compel SeeCubic to provide complete supplemental interrogatory answers and produce responsive documents from SCBV is GRANTED-IN-PART.** Rembrandt moves to compel SeeCubic to supplement all interrogatory responses to include matters concerning pre-2020 information on SCBV within SeeCubic's possession, custody, or control. Rembrandt also seeks supplemental responses to all requests for production of documents held by or available from SCBV, SeeCubic, Stastney, and other officers, directors, employees, agents, or counsel acting for either entity. (D.I. 138 at 3-4)

**15.** Although Rembrandt contends this discovery is relevant to its claims regarding the technology that passed from its predecessor to Stream to SCBV, Rembrandt did not subpoena Stream or SCBV for this information before SeeCubic acquired SCBV in the 2025 bankruptcy sale, and it does not otherwise explain why the requested discovery is now critical to its case. (*Id.*) Instead, Rembrandt states that "SeeCubic has failed to articulate any business activities, communications, or documents that are not relevant to any claims in the case." (*Id.* at 3) But as the party moving to compel discovery, Rembrandt bears the initial burden of establishing the relevance of the requested information on SCBV. *Thompson-El v. Greater Dover Boys & Girls Club*, C.A. No. 18-1426-RGA, 2022 WL 606700, at *2 (D. Del. Jan. 28, 2022). On this record, Rembrandt has not met its burden.

**16.** Rembrandt's motion to compel broadly requests discovery on a laundry list of subjects without tying them to specific written discovery requests or claims: "SCBV's Philips

license,[6] software, hardware, customer demonstrations, 3D televisions, personnel, source-code work, product-development work, and communications with SeeCubic or Mr. Stastney[.]" (*Id.* at 4) Rembrandt does not acknowledge that SeeCubic offered to produce SCBV's source code or explain why it previously declined that offer.[7] (D.I. 141 at 2) During the teleconference on July 14, 2026, SeeCubic represented that it is not in possession of the remaining SCBV material and offered to submit a declaration from Stastney confirming this representation. (7/14/2026 Tr.)

**17.** Rembrandt's motion to compel is GRANTED to the extent that it seeks SCBV's source code, consistent with SeeCubic's offer to provide this discovery. SeeCubic shall also file a declaration from Stastney detailing the SCBV-related material, and the date range of the material, that was obtained by SeeCubic in Stream's bankruptcy sale. Rembrandt's motion is DENIED without prejudice in all other respects.

**18. Rembrandt's request for fees and costs pursuant to Rule 37(a)(5) is DENIED without prejudice.** Rembrandt provides no analysis or support for its request for fee shifting under Rule 37(a)(5).

<u>**SEECUBIC'S DISPUTE**</u>

**19. SeeCubic's motion to compel Rembrandt to produce Stephen Blumenthal for a second deposition and to pay costs and fees associated with the second deposition is GRANTED-IN-PART.** SeeCubic seeks a second, four-hour deposition of Blumenthal to

---

[6] In its response to Interrogatory No. 6, which was served on June 5, 2025, SeeCubic stated that although it had not conducted negotiations for the licensing of technology itself, SCBV "has a license from Philips." (D.I. 138, Ex. A at 17-18) There is no indication that Rembrandt pursued further discovery on this Interrogatory before the case was stayed on July 29, 2025. (D.I. 111)

[7] SeeCubic does not include any exhibits disclosing the parties' communications on the source code review. As a result, the scope and contours of the source code review offer and/or why the offer was declined at the time, are not clear on this record.

question him on 2,523 pages of emails produced after Blumenthal's deposition on June 11, 2026. (D.I. 139-1) In its responsive letter, Rembrandt objected to a four-hour deposition of Blumenthal. (D.I. 140 at 3) (requesting a denial of SeeCubic's request for an order "increasing deposition time beyond the Rule 30 seven (7) hour limit[.]"). During the discovery dispute teleconference, Rembrandt withdrew its objection and confirmed that it does not oppose a four-hour deposition of Blumenthal. (7/14/2026 Tr.) Therefore, SeeCubic's request for a four-hour deposition of Blumenthal is GRANTED.

**20.** SeeCubic's request for costs and fees associated with the second deposition of Mr. Blumenthal and the instant motion to compel is DENIED without prejudice. In support of its request for fee shifting, SeeCubic cites Rule 37(a)(5) without discussion and without supporting case authority applying Rule 37(a)(5) in analogous circumstances. (D.I. 139 at 4) Rule 37(a)(5) permits fee shifting "[i]f the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed[.]" Fed. R. Civ. P. 37(a)(5). Here, Rembrandt agreed to a second deposition of Blumenthal before the dispute was brought to the court, and the parties' dispute was limited only to the length of the deposition.

**21. Conclusion.** For the foregoing reasons, IT IS ORDERED that:

**a.** Rembrandt's motion to compel SeeCubic to prepare and produce Shadron Stastney, or another appropriate designee, for Rule 30(b)(6) testimony concerning SCBV is DENIED without prejudice.

**b.** Rembrandt is granted leave to depose Stastney about his negotiation of a 2019 settlement term sheet with Stream in accordance with Rule 30(b)(1).

**c.** Rembrandt's motion to compel SeeCubic to provide complete supplemental interrogatory answers concerning SCBV and produce responsive documents

held by or available from SCBV is GRANTED-IN-PART. The motion is GRANTED with respect to the production of SCBV's source code. The motion is DENIED without prejudice in all other respects.

**d.** On or before **July 23, 2026**, SeeCubic shall file a declaration from Shadron Stastney detailing the SCBV-related material, and the date range of the material, that was obtained by SeeCubic in Stream's bankruptcy sale.

**e.** Rembrandt's request for payment of fees and costs pursuant to Rule 37(a)(5) is DENIED without prejudice.

**f.** SeeCubic's motion to compel a second deposition of Stephen Blumenthal on the documents produced by Rembrandt on June 19, 2026 is GRANTED. Rembrandt shall produce Blumenthal for a deposition of no more than four (4) hours.

**g.** SeeCubic's request for payment of fees and costs pursuant to Rule 37(a)(5) is DENIED without prejudice.

**h.** On or before **July 23, 2026**, the parties shall submit a stipulated schedule for a limited extension of the fact discovery deadline to accommodate the remaining fact discovery contemplated by this Memorandum Order, including but not limited to the source code inspection and depositions of Stastney and Barenbrug. The court will not entertain any further extensions to the case dispositive motion deadline.

**22.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be

redacted, the parties shall jointly submit a proposed redacted version by no later than **July 23, 2026**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**23.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**24.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge